# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
_____

**MARTIN R GONZALEZ,**
          **Plaintiff,**

v.                                                            **Case No. 11-cv-1070**

**CITY OF MILWAUKEE,**
          **Defendant.**
_____

## **DECISION AND ORDER**

### **I. Background**

This is a Title VII case alleging race discrimination and retaliation. Plaintiff Gonzalez was a police officer working for the City of Milwaukee Police Department ("MPD"). Gonzalez was assigned to District 4 under the supervision of Sergeant Kerry Flowers and Captain Jerome O'Leary. Both of these supervisors are black and Gonzalez is white. On January 28, 2011, Gonzalez filed a request to trade his regular day off, January 28, 2011, for January 30, 2011. His request was denied. Gonzalez then requested approval for another officer to substitute for him on January 30. Gonzalez did not hear whether or not his replacement request was approved, and Gonzalez took January 30 off to spend the day with his daughter. However, Gonzalez's replacement request had not been approved and neither he nor a replacement reported to work on January 30. That morning, Flowers called Gonzalez and ordered him to report to work because he could not find an approved replacement request. Gonzalez told Flowers that he was with his daughter and did not have transportation. The parties dispute whether Flowers offered to provide transportation, but none was provided and Gonzalez did not attempt to report for work that day. Gonzalez admits that he failed to obey a direct order to report to work and that he failed to follow

procedure.

Flowers and O'Leary had discretion to handle this matter informally, but they decided to foward it to MPD's internal affairs division for a formal disciplinary investigation. After an investigation, Police Chief Edward Flynn made the decision to discharge Gonzalez on April 6, 2011, for failing to promptly obey an order from a higher ranking officer to report to work. The City of Milwaukee argues that the decision to refer the matter to internal affairs' formal disciplinary process and the discharge decision were made because of Gonzalez's previous disciplinary history and his misconduct, consistent with progressive discipline. Gonzalez argues that these decisions were made for discriminatory and retaliatory reasons. Gonzalez appealed Flynn's decision to the Fire and Police Commission ("FPC"), which conducted a full hearing at which Gonzalez was given an opportunity to testify, present evidence, and cross-examine witnesses. The FPC sustained Flynn's decision to discharge Gonzalez, finding he acted reasonably and without discrimination. Gonzalez then brought this suit against the City of Milwaukee claiming Title VII discrimination and retaliation, discrimination and retaliation under 42 U.S.C. § 1981, and an equal protection violation under 42 U.S.C. § 1983. The City of Milwaukee has moved for summary judgment on all claims.

## II. Discussion

### A. Title VII claims

Summary judgment is required if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F. Rul. Civ. P. 56(a). When considering a summary judgment motion, I view evidence in the light most favorable to the

non-moving party and may grant the motion only if no reasonable jury could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**1. Discrimination**

Gonzalez claims the City of Milwaukee discriminated against him in violation of Title VII. Title VII makes it illegal for an employer to discharge or "otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). He can prove his case using either direct or indirect evidence. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). Under the direct method of proof, the plaintiff can present either direct evidence or "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination." *Id.* at 1105 (internal quotations and citation omitted). To survive summary judgment, Gonzalez's evidence must be enough that a rational jury could find that but for his race, MPD would not have fired him. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000).

Gonzalez attempts to show a "convincing mosaic" of circumstantial evidence amounting to direct proof that his disciplinary matter was handled formally and he was fired because of his race. Gonzalez attempts to do this with "ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Silverman v. Bd. of Educ. of City of Chic.*, 637 F.3d 729, 734 (7th Cir. 2011). To qualify as direct evidence of discrimination, the remarks must be related to the employment decision in question. *Robin*, 200 F.3d at 1089. Statements that lack temporal proximity or that are

3

made in the context of random office banter are not evidence of intent to fire for an impermissible reason. *Id.* Gonzalez argues that O'Leary and Flowers referred to District 4 as "chocolate city" and "chocolate island," allegedly indicating an intent to turn District 4 into an all black district. However, he fails to show any temporal or contextual connection between these comments and the formal disciplinary referral or his discharge. Without some showing that these statements were more than office banter, they are not alone evidence of discriminatory intent. Gonzalez also offers other circumstantial evidence: his observation that white officers were transferred out of the district and black officers were transferred in and statements that Flowers and O'Leary scrutinized non-black officers more closely than black ones. However, Gonzalez still fails to show any direct nexus between these assertions and his particular discipline or discharge. In addition, many of these assertions are directly contradicted by factual evidence[1] and by Gonzalez's own statements.[2] I conclude that this is not enough circumstantial evidence to prove discriminatory intent.

Gonzalez also argues that his Title VII discrimination claim should withstand summary judgment because Flynn, who decided to fire him, acted as a conduit for O'Leary and Flowers' prejudice, a theory known as "cat's paw liability." *See Staub v. Proctor*, 131

---

[1] For example, Gonzalez's personal observation about department transfers was contradicted by Flynn's sworn statement that O'Leary and Flowers have no control over transfers, that Gonzalez was mistaken about many of the individuals he believed were transferred in and out, and that between March 2009 and April 2011, more non-black officers were transferred into District 4 than black officers. Flynn Aff., ECF No. 48.

[2] In November 2010, Gonzalez told the MPD that he did not feel he was personally being treated differently because of his race, and that he believed Flowers' comments around the office were made in jest. Regan Aff. Ex. 11, ECF No. 43-12.

S. Ct. 1186 (2011). "Animus and responsibility for the adverse action can both be attributed to the earlier agent (here, [O'Leary and Flowers]) if the adverse action is the intended consequence of that agent's discriminatory conduct." *Id.* at 1192. To survive summary judgment, plaintiff must produce evidence that shows the non-decision maker's actions were a "causal factor" in the discharge decision. *Smith v. Bray*, 681 F.3d 888, 900 (7th Cir. 2012). This is often shown with evidence that the non-decision maker directly advised the decision maker, *id.*, the decision maker was totally dependent on the non-decision maker for information, *Hicks v. Forest Pres. Dist. of Cook Cnty.*, 677 F.3d 781, 790 (7th Cir. 2012), or the non-decision maker gave the decision maker false information or concealed information, *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 380 (7th Cir. 2011) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997)). Gonzalez offers no evidence to support a finding that O'Leary and Flowers' alleged racial animus influenced Flynn's decision to fire him. Flynn received information from other officers in making his decision, and Gonzalez offers no evidence that O'Leary and Flowers advised Flynn or that they concealed information from him or lied to him. Without some evidence showing that O'Leary and Flowers' alleged racial animus influenced Flynn's decision, plaintiff fails to establish cat's paw liability.

Because I conclude that Gonzalez has not shown direct evidence of discrimination, I now analyze whether he has shown indirect evidence of discrimination. Under the indirect method, plaintiff must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was meeting his employer's expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside

5

the protected class were treated more favorably. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). If plaintiffs make a prima facie case, the burden shifts to the employer to give a non-discriminatory reason for the adverse employment action. *Id*. The burden then shifts back to plaintiff to show this reason is pretextual. *Id.*

Defendant concedes that Gonzalez is a member of a protected class and that he suffered an adverse employment action. It argues that Gonzalez fails to make a prima facie case because he was not meeting MPD expectations, as evidenced by his disciplinary record. In response, Gonzalez seems to blame O'Leary and Flowers' alleged racial animus for his bad disciplinary record, arguing that they referred past disciplinary matters to the formal disciplinary process because Gonzalez is white. He argues that prior to his final few disciplinary actions, his performance was satisfactory. As evidence, he points to Chief Flynn's testimony that the final disciplinary investigation was the "last straw," implying that but for his final few disciplinary actions, which were referred for a discriminatory reason, he would not have been fired. However, Gonzalez's argument is unfounded. Between March 2009 and April 2011, Gonzalez had at least seven disciplinary actions taken against him for a variety of violations,[3] some of which Flynn described as "fairly egregious acts." Regan Aff. Ex. A at 49, ECF No. 43-2. Flynn met with Gonzalez several times over this two year span to address concerns, at one point warning Gonzalez that he was "on his way [out] the door." *Id.* What's more, most, if not all of these formal disciplines were submitted and investigated by officers other than O'Leary and Flowers, and Flynn found enough to

---

[3] Gonzalez has appealed several of these disciplinary actions under the Milwaukee Police Officer Association's grievance procedure, which were still pending at the time of briefing.

warrant formal discipline. Additionally, Gonzalez offers no evidence connecting these past formal disciplinary referrals to O'Leary and Flowers' alleged racial animus. In fact, during his FPC appeal hearing, he blamed his ex-wife for many of his past disciplinary issues. Given Gonzalez's disciplinary record and Flynn's warnings, no reasonable jury could find that Gonzalez's job performance was satisfactory.

The parties also disagree on whether Gonzalez demonstrated that a similarly situated black officer was treated more favorably. Similarly situated means "directly comparable to the plaintiff in all material respects." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (internal quotations and citation omitted). In determining whether two coworkers are similarly situated, I consider whether the coworkers had the same supervisor and were subject to the same standards, *Salas v. Wis. Dept. of Corrections,* 493 F.3d 913, 923 (7th Cir. 2007), and "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or their employer's treatment of them," *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Illinois Dept. of Corr.,* 291 F.3d 460, 463 (7th Cir.2002)). Although this is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that the comparator is similarly situated to plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009).

Gonzalez argues that Officer Truman Dodd,[4] who is black, is similarly situated because in March 2011, he was absent without leave and received only informal counseling—he was not ordered to report to work and he was not discharged like Gonzalez

---

[4] Originally Gonzalez also argued that Officer Phillip Lewis was also similarly situated; however, Gonzalez abandoned this argument. Therefore I address only Dodd.

was. Although Gonzalez and Dodd both reported to the same supervisors and were absent from work without leave, the similarity ends there. Unlike Gonzalez, Dodd was absent without leave because of a family emergency—his daughter had been in a car accident and he had left town to be with her in the hospital. Because he was out of town, his supervisor made the discretionary decision not to order him to report to work. By Gonzalez's own account he simply wanted to spend the day with his daughter and was in Milwaukee. Also unlike Gonzalez, Dodd had been an officer since 2003 and had never been disciplined before this incident. These mitigating circumstances differentiate their conduct. Thus, I conclude that no reasonable jury could find that Gonzalez and Dodd are similarly situated. Because Gonzalez has not shown satisfactory job performance or a similarly situated black officer who was treated more favorably, he has not made a prima facie case of discrimination.

Even if Gonzalez had made a prima facie case for discrimination, he must still show some evidence that MPD's stated reasons for firing him were pretextual. To show pretext, plaintiff must show that the employer lied; in other words, "that the employer did not honestly believe in the reasons it gave for firing him." *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919–20 (7th Cir. 1996). Defendants asserted two non-discriminatory reasons for Gonzalez's discharge: his failure to follow an order to report to work and his disciplinary record. First, Gonzalez attempts to establish that these reasons are pretextual by showing they were not the actual motivation for the discharge. *Id.* at 919. Gonzalez argues that O'Leary and Flowers referred his violation to the formal disciplinary process rather than handling it informally because of racial animus and that but for this referral, he would not have been fired; therefore, the discharge was motivated by racial animus. However,

Flynn—not O'Leary or Flowers—made the decision to fire Gonzalez, and neither O'Leary nor Flowers participated in the investigation. Even assuming O'Leary and Flowers' referral was motivated by racial animus,which I have already concluded Gonzalez has failed to establish, Gonzalez shows no evidence that such animus motivated Flynn's decision to fire him. Despite the formal disciplinary decision, Flynn had discretion to issue a range of disciplines, and Gonzalez shows no evidence that Flynn's decision was motivated by racial animus rather than the proffered reasons. Second, Gonzalez attempts to establish pretext by showing that the proffered reasons are insufficient to justify discharge, *id.*, arguing the previous disciplinary actions were also the result of O'Leary and Flowers' racial animus. As I have already concluded, Gonzalez provides no evidence that any of these previous disciplinary actions were racially motivated. And even if O'Leary and Flowers referred each of the previous disciplinary actions to the formal process for discriminatory reasons, the allegations were investigated by other officers and issued by Flynn. In short, no reasonable jury could find that MPD is lying about the reasons it gave for firing Gonzalez in order to cover up discrimination. Thus, even if plaintiff could show a prima facie case of discrimination, he fails to show that defendant's reasons for firing him were pretextual.

Gonzalez also argues that his Title VII discrimination claim should survive summary judgment because he can at least show that race was a motivating factor in the decision to fire him. 42 U.S.C. § 2000e-2(m) states that plaintiff can establish an unlawful employment practice by showing that "race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." Plaintiffs can use direct or indirect evidence to make such a showing. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100–01 (2003). If plaintiff shows that race was a motivating factor, the burden shifts to the

9

employer to prove that it would have made the same decision regardless of plaintiff's race. *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013). I have already concluded that Gonzalez has failed to show direct or indirect evidence of race discrimination, therefore his mixed-motive claims fail as well. Gonzalez has shown no facts to support the assertion that Flynn's discharge decision was motivated by race or influenced by the racial animus of others. Even if it were, there is ample evidence to suggest that based on Gonzalez's disciplinary history, Flynn would have made the same decision regardless of race. *See Grigsby v. LaHood*, 628 F.3d 354, 360–61 (7th Cir. 2010).

**2. Retaliation**

Title VII also makes it unlawful for an employer to retaliate against an employee who has complained about discrimination. § 2000e-3(a). Like a discrimination claim, a Title VII retaliation claim can be shown through either direct or indirect evidence. *Silverman*, 637 F.3d at 740. The show retaliation using direct evidence, plaintiff must show: (1) he engaged in a statutorily protected activity; (2) that he was subjected to an adverse employment action; and (3) a causal connection between the two. *Gates*, 513 F.3d at 686. "In order to demonstrate the 'causal link,' the plaintiff must demonstrate that the employer would not have taken the adverse action 'but for' the protected expression." *Johnson*, 91 F.3d at 938–39 (citation omitted). Circumstantial evidence, such as suspicious timing, "may permit a plaintiff to survive summary judgment provided there is other evidence that supports the inference of a causal link." *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004).

In October 2010, Gonzalez's squad partner Officer Cooke complained to internal

affairs that Flowers was discriminating against non-black officers in District 4.[5] As part of the internal investigation, Gonzalez was interviewed on November 1, 2010. Three months later Flowers and O'Leary referred his January 30, 2011 disciplinary issue to MPD's formal disciplinary process rather than handling it informally, and this referral ultimately led to his discharge. Gonzalez argues that this three month span is circumstantial evidence that his supervisors escalated the disciplinary issue in retaliation for his participation in Cooke's internal complaint. However, Gonzalez fails to provide any additional evidence to support retaliation, and timing itself is not enough. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Gonzalez also fails to connect his retaliation theory to Flynn's discharge decision or to explain how retaliation played a role in the escalation of any of his previous disciplinary actions. And Gonzalez admits that during his November 1, 2010 interview, he disagreed with Cooke's accusations of racial problems within the district and thought his supervisors acted for the good of the service. Regan Aff. Ex. 11, ECF No. 43-2. Therefore it appears that his supervisors had nothing to retaliate against.

Gonzalez does not attempt to establish a prima facie case of retaliation under the indirect method of proof. Thus, I conclude that no reasonable jury could find that Gonzalez's discharge was motivated by retaliation.

**B. § 1981 claim**

Gonzalez also alleges discrimination and retaliation under § 1981. Section 1981 provides that all persons . . . shall have the same right . . . to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens. 42 U.S.C § 1981(a). The

---

[5] That investigation ultimately found no racial discrimination on the part of Flowers.

methods of proof and elements of a § 1981 case are essentially identical to that of a Title VII case. *Johnson*, 91 F.3d at 940. Therefore, because Gonzalez cannot survive summary judgment on his Title VII discrimination and retaliation claims, I also conclude that he cannot survive summary judgment on his § 1981 claim.

**C. § 1983 claim**

Finally, Gonzalez also claims that O'Leary and Flowers' behavior violated § 1983 because their allegedly discriminatory treatment amounted to an equal protection violation under the 14th Amendment. Section 1983 provides that any person who deprives a citizen "of any rights, privileges, or immunities" while acting under color of state law shall be liable to that citizen." 42 U.S.C. § 1983. Municipal governments are subject to § 1983 suits because they are deemed a "person" under the statute. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690 (1978). However, local governments are not responsible for the actions of their employees. *Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734 (7th Cir. 1994) ("The Supreme Court has consistently interpreted [§ 1983] as barring *respondeat superior* liability on the part of a local government unit."). Rather, in order for a local government to be liable under § 1983, plaintiff must demonstrate that it was the execution of a municipal policy, custom, or practice that inflicted the injury. *Monell*, 436 U.S. at 694. Plaintiff must show a direct causal link between the municipal policy and the constitutional deprivation. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 509–10 (7th Cir. 1993). Gonzalez has failed to allege any policy, custom, or practice of MPD that caused the alleged equal protection violation. Thus, his § 1983 equal protection claim fails as well.

**THEREFORE, IT IS ORDERED** that City of Milwaukee's summary judgment motion

(ECF No. 41) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 14th day of August, 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge